UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KATHY ROSS, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|   *vs.* | ) | 1:13-cv-02033-JMS-DML |
| | ) | |
| CAROLYN W. COLVIN, *Acting Commissioner* | ) | |
| *of Social Security Administration*, | ) | |
|     *Defendant.* | ) | |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Kathy Ross applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on April 12, 2011. After a series of administrative proceedings, including a hearing in July 2012 before Administrative Law Judge ("ALJ") Gregory Hamel, the ALJ determined that Ms. Ross was not entitled to benefits. In October 2013, the Appeals Council denied Ms. Ross' request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Ms. Ross then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the

credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's

decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Ross was thirty-nine years old on the date of her hearing, July 11, 2012. [Filing No. 13-2 at 44.] She suffers from various physical and mental impairments, which will be discussed as necessary below.[1] She met the insured status requirements of the Social Security Act through June 30, 2013. [Filing No. 13-2 at 26.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on July 31, 2012. [Filing No. 13-2 at 24-35.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Ross did not engage in substantial gainful activity[2] since the alleged onset date of her disability, September 15, 2008. [Filing No. 13-2 at 26.]

- At Step Two, the ALJ found that Ms. Ross suffered from the following severe impairments: back pain with degenerative disc disease, minimal patellofemoral osteoarthritis of both knees, fibromyalgia, obesity, panic disorder, depression, and borderline intellectual functioning. However, the ALJ found that Ms. Ross' hypertension, folliculitis, and skin abscess were not severe. [Filing No. 13-2 at 26-27.]

---

[1] Ms. Ross detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Ross, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

- At Step Three, the ALJ found that Ms. Ross did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Specifically, the ALJ concluded that the evidence did not support a conclusion that any of the following Listings were met: Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), Listing 12.04 (affective disorders), Listing 12.05 (mental retardation), and Listing 12.06 (anxiety-related disorders). [Filing No. 13-2 at 27-29.] The ALJ next determined that Ms. Ross had the residual functional capacity ("RFC") to perform light work except that she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; and she can perform only routine and repetitive tasks which do not require more than occasional public contact.[3] [Filing No. 13-2 at 29-33.]

- At Step Four, the ALJ found that Ms. Ross was unable to perform her past relevant work as a construction worker, short order cook, and lithographic general worker. [Filing No. 13-2 at 33.]

- At Step Five, the ALJ found that Ms. Ross could perform other jobs existing in the national economy such as a small products assembler and an inspector/hand packager. [Filing No. 13-2 at 33-34.]

Based on these findings, the ALJ concluded that Ms. Ross was not disabled and thus not entitled to benefits. [Filing No. 13-2 at 34.] Ms. Ross sought review of the ALJ's decision from the Appeals Council, but it denied her request for review. [Filing No. 13-2 at 4-7.] Ms. Ross' appeal from the Commissioner's decision is now before this Court.

### III.
#### DISCUSSION

Ms. Ross argues that the ALJ erred in two respects: (1) the ALJ improperly discredited the opinion of Ms. Ross' treating physician; and (2) in deciding that Ms. Ross' testimony was not credible, the ALJ failed to consider that state agency experts previously found Ms. Ross to be credible. [Filing No. 17 at 13-20.] The Court will address each argument in turn.

---

[3] Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

### A. The Weight Given to the Opinion of Ms. Ross' Treating Physician

Dr. Muschkbar Khan had been treating Ms. Ross for approximately a year at the time of the hearing before the ALJ. [Filing No. 13-2 at 32.] At the hearing, Ms. Ross introduced a one-page form filled out by Dr. Khan that required Dr. Khan to circle the best answer to thirteen questions. [Filing No. 13-7 at 132.] For example, Dr. Khan circled that Ms. Ross could "Stand/Walk" for fifteen minutes at one time and could "Stand/Walk" for less than sixty minutes in an entire workday. [Filing No. 13-7 at 132.]

In arriving at Ms. Ross' RFC, the ALJ gave "limited weight" to the answers provided by Dr. Khan because Dr. Khan's "assertions are inconsistent with other substantial evidence in the record, including her own treatment notes and with examination findings made by other physicians." [Filing No. 13-2 at 32.] First, the ALJ noted that "Dr. Khan's own treating records show that the claimant has tenderness in her back, but otherwise has no significant physical examination finding[s] including no difficulty getting around and no deficits in gait, coordination, motor strength, sensation or reflexes," but Dr. Khan's answers state that Ms. Ross has significant physical limitations. [Filing No. 13-2 at 32 (citing Filing No. 13-7 at 91-131).] Second, the ALJ found that Ms. Ross' "activity suggests greater functional abilities than are described [by Dr. Khan]"; Ms. Ross stated during a consultative exam that "she goes for walks and goes to the park" and testified before that ALJ that "she goes grocery shopping for a few items and does some household chores." [Filing No. 13-2 at 32 (citing Filing No. 13-7 at 42-45).] Third, Dr. Khan's answers are not supported by the treatment records of Dr. Mary Frazier, "which show that the claimant has back pain, but otherwise no significant physical examination findings including negative straight leg raise and no deficits in sensation or reflexes." [Filing No. 13-2 at 32 (citing Filing No. 13-7 at 91-131).] Fourth, the ALJ criticizes the form provided to Dr. Khan because it was "very suggestive" in that

it first identified small increments of time—*e.g.*, "less than 15 minutes," "15 minutes," and "30 minutes"—and the form is "preprinted with no supporting narrative." [Filing No. 13-2 at 32.] Finally, the ALJ concluded by noting that, "to the extent that Dr. Khan indicated that the claimant would be absent from work more than 3 days per month, the undersigned also gives her opinion little weight as the ultimate question of disability is reserved to the Commissioner." [Filing No. 13-2 at 32.]

Ms. Ross contends that the ALJ's decision to give Dr. Khan's opinion little weight was in error for three reasons. [Filing No. 17 at 14.] First, Ms. Ross argues that the ALJ used the wrong legal standard because a treating source's opinion is entitled to controlling weight if it is "not inconsistent" with other evidence in the record, but here, the ALJ stated that the treating source opinion had to be "consistent" with the record. [Filing No. 17 at 15 (citing *Lopez-Navarro v. Barnhart*, 207 F.Supp.2d 870 (E.D. Wis. 2002)).] Second, Ms. Ross maintains that it was error for the ALJ to "not take into account the fact that Dr. Khan's opinion is the most recent in the record" and thus reflects a worsening of Ms. Ross' condition. [Filing No. 17 at 15 (citing *Cichon v. Barnhart*, 222 F.Supp.2d 1019 (N.D. Ill. 2002)).] Finally, Ms. Ross argues that the ALJ must give "good reasons" for the weight given to a treating source's opinion, and the fact that the form Dr. Khan filled out is "suggestive" is not such a reason. [Filing No. 17 at 16.]

The Commissioner responds to each of Ms. Ross' arguments. First, the Commissioner maintains that Ms. Ross' argument regarding the correct legal standard is mistaken, as the ALJ explicitly stated that Dr. Khan's opinion was "inconsistent" with the record. [Filing No. 22 at 6.] In any event, the Commissioner contends that the precise language used by the ALJ is immaterial if the ALJ, as he did here, specifically discusses evidence that is inconsistent with the physician's opinion. [Filing No. 22 at 7 n.1.] Second, regarding the fact that Dr. Khan's opinion was the most

recent in the record, the Commissioner contends that the ALJ is not required to explicitly state how he weighed every possible factor, as long as he adequately explained the basis for his decision. [Filing No. 22 at 9.] Lastly, the Commissioner argues that Ms. Ross ignores several of the reasons the ALJ gave for giving limited weight to Dr. Khan's opinion—such as the fact that Dr. Khan's one-page form was inconsistent with her own earlier treatment notes—thus Ms. Ross' criticism of the ALJ's statement that the form given Dr. Khan was suggestive cannot undermine all of the other unchallenged reasons the ALJ set forth for giving Dr. Khan's opinion limited weight. [Filing No. 22 at 4-10.] Ms. Ross did not file a reply brief to respond to the Commissioner's arguments.

"[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *see Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527(c). Special weight is given to the treating physician's opinion "because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" *Keterlboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (quoting *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)). Thus an ALJ "may discount" a treating physician's opinion if it is "inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints." *Id.*; *see also Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). The ALJ need only "minimally articulate his reasons for crediting or rejecting" a treating physician's opinion. *Clifford*, 227 F.3d at 870.

The ALJ here complied with his obligation to minimally articulate the reasons for giving Dr. Khan's opinion limited weight, and none of Ms. Ross' arguments regarding the ALJ's treatment of Dr. Khan's opinion warrant reversal. First, Ms. Ross' argument that the ALJ applied the

incorrect legal standard is simply incorrect. As set forth above, the Social Security regulations require an ALJ to give a treating physician's opinion controlling weight if, among other things, "it is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). Put differently, an ALJ "may discount" a treating physician's opinion if it "is inconsistent" with the record. *Keterlboeter*, 550 F.3d at 625. This is precisely the standard the ALJ applied here. [*See* Filing No. 13-2 at 32.] Indeed, the ALJ explicitly stated that Dr. Khan's opinion was entitled to limited weight because her opinion was "inconsistent with other substantial evidence in the record," and then proceeded to set forth several inconsistencies. [Filing No. 13-2 at 32.] Therefore, the ALJ applied the correct legal standard.[4]

    Ms. Ross' second challenge to the ALJ's assessment of Dr. Khan's opinion—that the ALJ failed to consider that it was the most recent evidence and thus reflects a worsening of her condition—is equally unavailing. The ALJ was only required to "minimally articulate" his reasons for giving little weight to Dr. Khan's opinion, *Clifford*, 227 F.3d at 870, which the Seventh Circuit has described as a "very deferential" and "lax" standard, *Elder*, 529 F.3d at 415 (citation and quotation marks omitted). As detailed above, the ALJ identified several reasons for discounting Dr. Khan's opinion, including that her opinion was inconsistent with her own treatment notes, with

---

[4] Ms. Ross' reliance on *Lopez-Navarro* in support of her conclusion is misplaced. The ALJ in *Lopez-Navarro* required the treating physician's opinion to be "consistent" with the record rather than "not inconsistent," and the district court found this to be reversible error. *Lopez-Navarro*, 207 F.Supp.2d at 885. The Court doubts that there is any meaningful difference between the different formulations of the standard when applied by an ALJ. *See Nelson v. Colvin*, 2014 WL 4329011, *8 (S.D. Ind. 2014) (concluding that the differences between the two standards were "semantic" because the ALJ identified specific evidence that was inconsistent with the treating physician's opinion). Indeed, the Seventh Circuit has used the formulation criticized by Ms. Ross. *See Elder*, 529 F.3d at 415 ("[A] treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is . . . (2) consistent with substantial evidence in the record."). And in any event, the ALJ here applied the "not inconsistent" standard, which makes *Lopez-Navarro* inapplicable and Ms. Ross' argument meritless.

evidence from other physicians, and with Ms. Ross' testimony. [Filing No. 13-2 at 32.] This explanation is sufficient for the ALJ to meet his obligation to minimally articulate his rationale. *See Henke v. Astrue*, 498 Fed. Appx. 636, 640 (7th Cir. 2012) (holding that the ALJ "more than minimally articulated her rationale for rejecting [the treating physician's] opinion that [the claimant] suffered from debilitating physical impairments" because the ALJ explained how the physician's opinion "lacked support in his own treatment notes" and was inconsistent with "other medical evidence in the record").

Ms. Ross asserts that this is insufficient because the ALJ did not also consider that Dr. Khan's testimony was the most recent and thus could reflect a worsening of Ms. Ross' conditions. [Filing No. 17 at 15-16 (citing *Cichon*, 222 F.Supp.2d at 1030).] But the Seventh Circuit has made clear that an ALJ need not explicitly weigh every relevant factor to conclude that a treating physician's opinion should be discounted, as long as the ALJ otherwise articulates why it is inconsistent with the record. *See Henke*, 498 Fed. Appx. at 640 n.3 ("The ALJ did not explicitly weigh every factor while discussing her decision to reject [the treating physician's] reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion, and its inconsistency with the rest of the record. This is enough.") (citations omitted); *see also Elder*, 529 F.3d at 415-16. This is precisely what the ALJ did here, and thus it was not error for him to not explicitly consider the fact that Dr. Khan's opinion was the most recent in the record.[5]

---

[5] Ms. Ross' reliance on *Cichon* in support of her argument is misplaced. Although the *Cichon* Court stated that a treating physician's report, which was the most recent medical evidence, was not "necessarily inconsistent with earlier medical reports in the record," the *Cichon* Court concluded that the ALJ ultimately erred by failing to explicitly articulate the reasons that led him to conclude the treating physician's report was inconsistent with the other evidence. 222 F.Supp.2d at 1030. And in any event, Seventh Circuit precedent makes clear that the ALJ's failure to explicitly consider every possible factor does not constitute error when, as here, the ALJ minimally articulated why the treating physician's opinion was inconsistent with the record. *See Henke*, 498 Fed. Appx. at 640 n.3; *Elder*, 529 F.3d at 415-16.

Finally, Ms. Ross' argument that the ALJ failed to give "good reasons" for discrediting Dr. Khan's opinion fares no better. [Filing No. 17 at 16.] The Court already concluded that the ALJ met his duty to minimally articulate the basis for his conclusion that Dr. Khan's opinion was inconsistent with the other evidence in the record. And as the Commission correctly points out, Ms. Ross ignores—and thus leaves unchallenged—most of the reasons the ALJ gave. She instead only criticizes the ALJ's conclusion that the form filled out by Dr. Khan was suggestive because it first identified small increments of time—*e.g.*, "less than 15 minutes," "15 minutes," and "30 minutes." [*See* Filing No. 13-2 at 32.] Ms. Ross fails to cite a single authority for the proposition that her mere disagreement with only one of several reasons given by an ALJ for discounting evidence constitutes reversible error. [*See* Filing No. 17 at 16.] Absent such authority, the Court has no basis to conclude that the ALJ failed to minimally articulate the basis for his decision to discount Dr. Khan's opinion, which is all that is required. See *Clifford*, 227 F.3d at 870.

In sum, none of Ms. Ross' attacks on the ALJ's decision to give limited weight to Dr. Khan's opinion is persuasive. The ALJ explained how Dr. Khan's opinion was inconsistent with both her previous treatment notes and other medical evidence in the record, and "[t]his is enough." *Henke*, 498 Fed. Appx. at 640 n.3.[6]

---

[6] The ALJ also made the following observation about Dr. Khan's opinion: "[T]o the extent that Dr. Khan indicated that the claimant would be absent from work more than 3 days per month the undersigned also gives her opinion little weight as the ultimate question of disability is reserved to the Commissioner." [Filing No. 13-2 at 32.] Ms. Ross argues that Dr. Khan was not making an ultimate disability determination, but was instead providing a medical opinion, which precludes this from constituting a valid reason to give limited weight to Dr. Khan's opinion. [Filing No. 17 at 16-17.] But, as the Commissioner points out, [Filing No. 22 at 8], even if the ALJ was wrong to consider that statement by Dr. Kahn an ultimate disability determination, the ALJ provided several other reasons for discrediting Dr. Khan's opinion—most of which Ms. Ross ignores—that are sufficient to uphold the ALJ's decision. *See Henke*, 498 Fed. Appx. at 640 n.3.

### B. The ALJ's Credibility Analysis

The ALJ concluded that Ms. Ross' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [Filing No. 13-2 at 30.] Ms. Ross' credibility was undermined, in the ALJ's view, because her testimony was inconsistent with her previous statements during consultative examinations and seemed exaggerated. [Filing No. 13-2 at 30-31.]

Ms. Ross argues that the ALJ's credibility analysis was flawed. [Filing No. 17 at 17-19.] The problem with the ALJ's credibility analysis, says Ms. Ross, is that "the ALJ fails to acknowledge the fact that the State Agency experts found Ms. Ross to be credible," as is required by SSR 96-7p. [Filing No. 17 at 18.] Ms. Ross is correct that two state agency experts stated in their RFC assessments that Ms. Ross' statements regarding her limitations were "credible," [Filing No. 13-7 at 54; Filing No. 13-7 at 75], yet these conclusions were not mentioned by the ALJ, [*see* Filing No. 13-2 at 29-33].

The Commissioner responds that Ms. Ross ignores the reasons the ALJ provided for his conclusion that Ms. Ross' testimony was not credible, and instead picks one piece of evidence not mentioned by the ALJ and argues that it was error not to consider it. [Filing No. 22 at 10-11.] This failure is not error, says the Commissioner, because the ALJ need not consider every piece of evidence, and the ALJ's decision must be upheld as long as it is not "patently wrong" and is supported by "substantial evidence." [Filing No. 22 at 10-12.] Moreover, the Commissioner argues that even if the ALJ should have considered the state agency experts' statements regarding Ms. Ross' credibility, given that the ALJ otherwise explained his credibility determination, any such error is harmless. [Filing No. 22 at 12.] Again, Ms. Ross did not file a reply brief responding to the Commissioner's arguments.

In making his credibility determination, the ALJ was required to consider the findings of the state agency experts and "explain the weight given to the opinions in [his] decision[]." SSR 96-7p, at *8. Moreover, "if the case record includes a finding by a State agency medical or psychological consultant . . . on the credibility of the [claimant's] statements about limitations or restrictions due to symptoms, the . . . [ALJ] . . . must consider and weigh this opinion . . . and must explain the weight given to the opinion in the decision." *Id.* Nevertheless, the Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska*, 454 F.3d at 738.

Even if the Court identifies an error, as the Commissioner points out, it does not necessarily follow that the ALJ's decision must be reversed, as the error could be harmless. *See Schomas v. Colvin*, 732 F.3d 702, 707-08 (7th Cir. 2013). An error is harmless "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). An ALJ's errors regarding an adverse credibility finding are harmless if the RFC is not affected. *See Mueller v. Colvin*, 524 Fed. Appx. 282, 285 (7th Cir. 2013) (applying harmless error to the ALJ's failure to adequately explain the adverse credibility determination because the ALJ adopted medical opinion with undisputed restrictions in RFC).

The Court need not address whether the ALJ violated SSR 96-7p by not explicitly considering the credibility determinations of the state agency experts. Even if the ALJ erred in this respect, the error was harmless, as the Court has "great confidence that the agency w[ould] reinstate its decision on remand." *Spiva*, 628 F.3d at 353.

The error alleged by Ms. Ross is that the ALJ should have, but did not, explicitly consider the credibility assessment of two state agency experts: Dr. Gange and Dr. Sands. [Filing No. 17

at 18-19.] Dr. Gange conducted a Mental RFC Assessment on July 5, 2011, and concluded that Ms. Ross was "not significantly limited" in most areas and "moderately limited" in a few areas. [Filing No. 13-7 at 52-54.] At the end of his assessment, Dr. Gange noted that Ms. Ross is "capable of preparing meals, housework, going out in public independently and using public transpo[rtation]," that she "is able to shop" and "handle finances," and that she "will also go to the movies occasionally, go for walks, [and] go to a park." [Filing No. 13-7 at 54.] Lastly, Dr. Gange stated that Ms. Ross "is credible" and that she "has the ability to tend to unskilled tasks w[ith] minimal public interaction." [Filing No. 13-7 at 54.]

Dr. Sands conducted a Physical RFC Assessment on July 6, 2011. [Filing No. 13-7 at 70-75.] Dr. Sands found that Ms. Ross had the following limitations: she can occasionally left 20 pounds; frequently lift 10 pounds; stand and/or walk for a total of 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; push or pull any amount; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never balance. [Filing No. 13-7 at 71-72.] Lastly, when asked whether the symptoms alleged were consistent with the medical evidence, Dr. Sands wrote, "credible." [Filing No. 13-7 at 75.] The ALJ gave "significant weight" to the RFC assessments of both Dr. Gange and Dr. Sands, [Filing No. 13-2 at 31], and he incorporated their limitations into Ms. Ross' RFC, [Filing No. 13-2 at 29 (stating that Ms. Ross can "perform light work except that she can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, or scaffolds; and she can perform only routine and repetitive tasks which do not require more than occasional public contact")].

Ms. Ross argues that the ALJ may have found her credible had he explicitly considered the fact that Dr. Gange and Dr. Sands found her allegations credible. Specifically, Ms. Ross asserts that, "[s]ince the ALJ . . . afford[ed] significant weight to [the state agency experts'] opinions, it

would logically follow that Ms. Ross is credible." [Filing No. 17 at 18.] The logic Ms. Ross asks the Court to employ is quite flawed. The state agency experts on which the ALJ relied concluded that Ms. Ross' representations regarding her symptoms and limitations were credible based on Ms. Ross' statements at the time (July 2011). [Filing No. 13-7 at 52-54; Filing No. 13-7 at 70-75.] However, at the hearing before the ALJ a year later (July 2012), Ms. Ross changed her story. The ALJ explained this as follows: Ms. Ross "minimized[d] her activities at the hearing, in contrast to what she said at the consultative examination [in June 2011] . . . where she indicated that she . . . goes to the movies, to the park, and out to eat," while "[a]t the hearing she said that she has not done these things since 2008." [Filing No. 13-2 at 30.] Moreover, Ms. Ross testified at the hearing that she can only "do things for 10 to 15 minutes and then needs a break for 30 minutes to an hour," which the ALJ noted was inconsistent with the level of activity Ms. Ross presented to the state agency experts. [Filing No. 13-2 at 30-31.]

The inconsistencies noted by the ALJ between Ms. Ross' hearing testimony and her previous representations undercut Ms. Ross' argument. Even if the Court remanded to the ALJ for him to explicitly consider the state agency experts' opinions that Ms. Ross is credible, given that Ms. Ross' hearing testimony was inconsistent with her earlier allegations, the ALJ would still have no reason to think Ms. Ross' subsequent inconsistent allegations were credible; indeed, the ALJ implicitly accepted the state agency experts' opinions that Ms. Ross' earlier statements were credible by essentially adopting the RFC limitations they recommended. Thus, contrary to Ms. Ross' position, it does not logically follow that the state agency experts' credibility assessments would impact the ALJ's credibility assessment given that Ms. Ross' testimony before the ALJ was inconsistent with her earlier statements that the state agency experts' deemed credible.

Accordingly, even assuming the ALJ violated SSR 96-7p by not explicitly addressing the state agency experts' credibility determinations, the Court "cannot see how a different conclusion possibly could be reached on remand," making any error harmless. *Schomas*, 732 F.3d at 708; *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

## IV.
### CONCLUSION

For the reasons stated, the Commissioner's decision below is **AFFIRMED**. Final judgment will be entered accordingly.

October 28, 2014

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**